# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 6, 2008

## STATE OF TENNESSEE v. LARRY DARNNELL PINEX

**Appeal from the Criminal Court for Davidson County**
**No. 2005-C-2514     Mark J. Fishburn, Judge**

---

**No. M2007-01211-CCA-R3-CD - Filed November 6, 2008**

---

The Defendant, Larry Darnnell Pinex, was convicted of attempted aggravated rape, a Class B felony, attempted aggravated sexual battery, and attempted especially aggravated burglary, Class C felonies. He was sentenced as a Range III, persistent offender to twenty-five years for attempted aggravated rape and to twelve years for each of the remaining offenses. The twenty-five-year sentence was ordered to be served concurrently with the sentence for attempted aggravated sexual battery but consecutively to the twelve-year sentence for attempted especially aggravated burglary, for an effective sentence of thirty-seven years in the Department of Correction. He presents five issues for our review: (1) whether the evidence is sufficient to support his convictions for attempted aggravated sexual battery and attempted especially aggravated burglary; (2) whether the rape and battery convictions violate constitutional proscriptions against double jeopardy; (3) whether the State should have been required to make an election of offenses; (4) whether his conviction for attempted especially aggravated burglary should be modified to attempted aggravated burglary based upon Tennessee Code Annotated section 39-14-404(d); and (5) whether he received an excessive sentence. Following our review of the record and the parties' briefs, we conclude that the Double Jeopardy Clause of the Tennessee Constitution precluded convictions for both attempted aggravated rape and attempted aggravated sexual battery because the evidence showed that the Defendant made one continuous attempt to rape the victim. Consequently, we vacate the judgment of the trial court as to the Defendant's conviction for attempted aggravated sexual battery, as that offense should have been merged with the Defendant's conviction for attempted aggravated rape. We also modify the conviction for attempted especially aggravated burglary to attempted aggravated burglary and order a sentence of ten years for that offense.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part; Reversed in Part; Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined. DAVID G. HAYES, SR.J., filed a dissenting opinion.

Jeffrey Devasher, Assistant Public Defender, Nashville, Tennessee, for the appellant, Larry Darnnell Pinex.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

On June 1, 2005, Sharon Hockett (the victim) was attacked inside her Nashville apartment. As she fought with the intruder, a friend arrived at her apartment, and the attacker fled. A few days later, the police arrested the forty-nine-year-old Defendant, and a Davidson County grand jury indicted him for attempted aggravated rape, aggravated sexual battery, and especially aggravated burglary. A jury trial followed.

At trial, the victim testified that she lived in an eighth-floor apartment in the Vine Hill area of Nashville at the time of the incident. On the evening of the attack, she was on her way home from a week-long stay at her aunt's house when she stopped at a store to speak with her friend, Reginald "Reggie" Gordon. Gordon promised to stop by her apartment with a pack of cigarettes after he got off work at the store, and she continued home.

After arriving home that evening, she talked with a neighbor in the breezeway outside her apartment for a few minutes. As she talked with the neighbor, she noticed a man she later identified as the Defendant at the opposite end of the breezeway; he was knocking on another neighbor's door. She said that she had never seen him before. The victim testified that the following occurred after she and her neighbor finished their conversation, and she entered her apartment:

> And as I was bending over turning my music down, my back was turned to my door and my door is shut and I raised up and I looked and [the Defendant was] at the door, I said, what the, he ran up to me and he grabbed—choked me by the neck and was telling me to "Bow down."

The Defendant was fully clothed, but the victim stated that he was pulling her head "towards his penis" while he choked her and ordered her to "Bow down." The victim told the Defendant that she would not let him rape her; specifically, she said, "You're going to have to kill me if you want to rape me." And, the Defendant responded, "I wish I had a knife, I'd kill you." The victim described the rest of the altercation as follows:

> I was just fighting back, just fighting, fighting beating and fighting, I was just trying to keep him from pulling my clothes off, and we ended up, I ran into the bathroom; he came in the bathroom and I was in the shower and he came in the shower and I grabbed the plunger and I started hitting him with the plunger, and he grabbed the—I was on my knees and I start hitting him in his area and trying to twist them and kick, you know, trying to just keep him off of me. And as I fell down, he

was trying to pull my dress up and pull my panties down and I crawled out from under him with the plunger, still hitting him. He grabbed the plunger and he start[ed] beating me with it and I couldn't do nothing else because I was bleeding real bad. And I ran to the closet, and I was running to the closet, he broke my glass table, and by the time I was holding the closet, there was a knock on the door. He was biting me and everything. And there was a knock on the door and it was Reggie, and I had just said to God, I said, "God, Lord, please send Reggie up here, please send him to this door." And as I was holding the closet door, I was hollering—telling Reggie to call the police, that this man is trying to rape me, and he ran to the door with the plunger and opened the door and ran past Reggie.

She said he hit her so many times with the plunger handle that she almost passed out. She also explained that the Defendant tried to pull off her panties, "but he couldn't get them because [she] was crawling . . . away from him."

During the struggle, the Defendant bit her three times. She could not remember exactly when he inflicted each bite, but she said that they came at different points during their fight. One bite was to her left breast. The prosecutor and the victim had the following exchange regarding when the breast bite occurred:

| [Prosecutor]: | Okay. All right. Do you remember at what point he bit your breast? |
| [victim]: | When I was trying to fight back. |
| [Prosecutor]: | It was all a part of the big fight? |
| [victim]: | (Nodded affirmative). |

After the attacker fled, she did not call the police right away because she was scared and she "just wanted somebody to be there with [her]." Her friend, Gordon, slept on the floor in her apartment that night. When she woke up the next morning at 6:00 a.m., she "was hurting real bad," so she called the police to report the attack. Police officers quickly arrived at her apartment, and she described her attacker as being an African-American man who had been wearing a green hat, a jersey-style shirt, shorts, and red flip flops. Police recovered a unique green hat and a purple cup from the victim's apartment that she said the Defendant brought inside and left there when he fled.

A police officer took several photographs of the victim's injuries. The photographs showed that she had a small bruise to her left forearm and small cuts to her right eyebrow and the back of her head. The cut on the back of her head bled profusely, but it did not require stitches. Additionally, she had three deeply bruised bite marks: one to the side of her left breast; one on her right hip; and one on her upper-left arm. She also had a large bruise on her left thigh, and there were red abrasions on the back of her neck where she was choked.

-3-

Officers took her to the hospital where nurses swabbed her bite wounds for evidence. While at the hospital, the victim refused to allow her blood to be drawn for toxicology analysis because she was afraid of needles. She informed the nurses that she would submit to a urine test, but none was conducted. The victim denied using drugs on the day of the attack but admitted that she had smoked marijuana laced with cocaine approximately one week prior to the incident.

Sometime after the incident, a detective showed the victim a photographic lineup, and she had "no hesitation" in identifying the Defendant as her attacker. She also made a positive courtroom identification.

On cross-examination, the Defendant's lawyer pointed out some discrepancies between the victim's preliminary hearing and trial testimony. At the preliminary hearing the victim did not testify that the Defendant had attempted to pull down her panties; she only said that he had lifted up her dress. The victim also confirmed on cross-examination that the Defendant never exposed his penis or specifically asked for sex. In addition, she stated that although she did not call the police immediately after the incident, she did go from her apartment to the lobby of the building to call another neighbor.

Detective Robert Carrigan of the Nashville Metropolitan Police Department testified that he responded to the victim's 9-1-1 call. The detective collected several items of physical evidence from the crime scene: a lime green, "Gilligan's Island-style" hat; a purple cup; a plunger handle that had been thrown over the victim's balcony; and the dress the victim had been wearing. The detective also testified that the victim did not hesitate in picking the Defendant out of a photographic lineup. Similarly, Detective Carrigan showed the photographic lineup to Reginald Gordon, and he also readily identified the Defendant as the victim's assailant.

Detective Carrigan recovered recordings from the victim's apartment building made by video surveillance cameras on the day of the attack. On these video recordings, which were shown to the jury, the Defendant can be seen entering the apartment building while wearing the lime green hat and holding the purple cup. The videos also showed him leaving the building without the hat or the cup.

The victim's friend, Reginald Gordon, testified that while he was working at a store that day, the victim came by to visit him, and they agreed that he would bring a pack of cigarettes to her apartment later that evening when they planned to play dominos. After he got off of work, he went to the victim's apartment. When he first knocked on her door, he received no response but could hear loud music playing. Then, he heard the victim screaming for help and "hollering" that someone was trying to hurt her. Next, the door to the victim's apartment opened, and a man Gordon later identified as the Defendant walked out. Gordon asked the Defendant what was wrong, and the Defendant responded, with "a little grin on his face," that he was "tired of these bitches doing this to me. She got what she deserved." Gordon then saw the Defendant throw a plunger handle over the railing.

Gordon described the interior of the victim's apartment as "a mess. Glass was everywhere, cushions, it was a struggle; I guess she must have been fighting him off or whatever." In the bathroom, the shower curtain had been torn down, and the rugs were in disarray. When he found the victim, her head was bleeding. He spent the night at the victim's apartment that night because she was scared and asked him not to leave.

Gordon had seen the Defendant "around the neighborhood" prior to the incident, and he once had a conversation with him about the victim. At that time, the Defendant asked Gordon if he had ever "messed around with" the victim, and Gordon answered in the negative, saying that they were "just friends." The Defendant said he "wanted to get with her and stuff like that"; he also wanted to know if she was an "easy person to get with . . . ." Gordon confirmed that he had picked the Defendant out of a photographic lineup when interviewed by a detective after the incident, and he made a positive courtroom identification.

On cross-examination, Gordon agreed that after the incident, the victim told him that the Defendant had introduced himself on the day of the attack as "Larry," and she talked to him. According to Gordon, she told the Defendant that Gordon was coming by her apartment later that night with some beers and maybe the Defendant could have one.

Special Agent Forensic Scientist Charles Hardy of the Tennessee Bureau of Investigation was tendered and accepted as an expert witness. He analyzed the swabs taken from the victim's bite wounds at the hospital the day after the incident. The Defendant's DNA was present on two of the swabs. There was not a sufficient amount of DNA on the third swab for it to be tested.

The Defendant did not testify or present evidence.

Following argument and deliberations, the jury found the Defendant guilty of attempted aggravated rape as charged in count one of the indictment, guilty of attempted aggravated sexual battery as charged in count two, and attempted especially aggravated burglary as charged in count three. Subsequently, the trial court held a sentencing hearing before imposing the Defendant's sentence.[1] His appeal is now properly before this court.

## ANALYSIS
### I.     Untimely motion for a new trial
Initially, we address the State's assertion that all issues appealed by the Defendant, except the sufficiency of the evidence and sentencing, should be considered waived by this Court because the Defendant's motion for a new trial was untimely. The Defendant does not contest that his motion for a new trial was untimely, but he argues that his issues were not waived because they "do not request or require a new trial as relief and would instead result in dismissal of those counts at issue if decided favorably to him, or constitute plain error under [Tennessee Rule of Appellate Procedure] 13(b) and [Tennessee Rule of Criminal Procedure] 52."

---

[1] The evidence presented at the sentencing hearing is detailed in the analysis section of this opinion.

Tennessee Rule of Criminal Procedure 33(b) mandates that a defendant's motion for a new trial must be made within thirty days of the date the order of sentence is entered:

> A motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial.

Tenn. R. Crim. P. 33(b). A trial court does not have jurisdiction to rule on a motion filed outside the thirty-day period. State v. Bough, 152 S.W.3d 453, 460 (Tenn. 2004). Consequently, "[i]f a motion for new trial is not timely filed, all issues are deemed waived except for sufficiency of evidence and sentencing." Id. (citing State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997)); see also Tenn. R. App. P. 3(e). Further, this Court does not have the authority to waive the untimely filing of a motion for a new trial. State v. Givhan, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980); see also Tenn. R. App. P. 4(a). Furthermore, Tennessee Rule of Appellate Procedure 3(e) provides that this Court will treat as waived any issue raised on appeal through which a defendant seeks a new trial, if that issue was not raised in a timely motion for a new trial. See Tenn. R. App. P. 3(e). The rule states in relevant part:

> Provided, however, that in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

Tenn. R. App. P. 3(e). Moreover, a trial judge's erroneous consideration of an untimely motion "does not validate the motion, and an appellate court will not consider the issues raised in the motion unless the issue or issues would result in the dismissal of the prosecution against the accused." State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989) (citing State v. Davis, 748 S.W.2d 206 (Tenn. Crim. App. 1987)) (other citations omitted).

In this case, because the order of sentence was entered on February 23, 2007,[2] the Defendant had until March 26, 2007, to file a motion for a new trial. Consequently, when the Defendant's motion was filed two days after that date, it was untimely. See Tenn. R. Crim. P. 33(b). In the Defendant's late-filed motion, he put forth three grounds supporting his request for a new trial: (1)

---

[2] No file-stamp date appears on the face of the Defendant's judgments. However, the judgments were signed by the trial judge on February 23, 2007, and the Defendant does not contest whether the judgments were actually entered that day. See State v. Kirby Stephens, No. M2006-02521-CCA-R3-CD, 2007 WL 2744999, at *6–8 (Tenn. Crim. App., Nashville, Sept. 21, 2007), perm. to appeal denied, (Tenn. Apr. 14, 2008) (providing a thorough and detailed analysis of the court rules, statutes, and judicial opinions affecting the determination of the "date" on which the order of sentence is entered for purposes of calculating the thirty-day period for the timely filing of a motion for a new trial, and concluding that it is the date the judgment form is file-stamped by the court clerk).

the trial court erred in handling a jury question; (2) the jury's verdict was against the weight of the evidence; and (3) "[a]ny other grounds that may be presented at a hearing on this matter." The trial court subsequently held a hearing on the Defendant's untimely motion, during which the Defendant's entire argument is quoted as follows: "Your honor, for purposes of the motion for a new trial, I'm just going to stand on my sufficiency of the evidence claim, which is all that I presented in my motion for a new trial." The motion was denied.

We agree with the Defendant that although his motion for a new trial was untimely, he has not waived appellate review of issues that would not result in the granting of a new trial if relief is warranted but would instead result in the dismissal of a conviction. See Tenn. R. App. P. 3(e); State v. Williams, 675 S.W.2d 499, 501 (Tenn. Crim. App. 1984) (explaining that issues that are not required to be filed in a motion for a new trial are "those that go to questions that could bring about an outright dismissal of a defendant's conviction"); State v. Kenneth Deangelo Thomas, No. M2004-03069-CCA-R3-CD, 2006 WL 521426, at *2 (Tenn. Crim. App., Nashville, Mar. 3, 2006), perm. to appeal denied (Tenn. Oct. 30, 2006). We also agree with the Defendant that the failure to file a timely motion for a new trial does not preclude this Court from considering issues involving prejudice to the judicial process or plain error. See State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (appellate court may "still may take notice at any time, within our discretion, of an error that affects a substantial right of an accused, even though not raised in a motion for new trial, where it may be necessary to do substantial justice") (citing Tenn. R. Crim. P. 52(b)).

The Defendant's arguments regarding the sufficiency of the convicting evidence and his sentence will be addressed herein because neither issue is waived by the untimely filing of a motion for a new trial. See Bough, 152 S.W.3d at 460. Further, we recognize that if the Defendant's argument regarding double jeopardy is meritorious, one or more of his convictions would be dismissed. See Williams, 675 S.W.2d at 501; see also State v. Lewis, 958 S.W.2d 736, 738 (Tenn. 1997) (explaining that a double jeopardy violation generally constitutes plain error) (citing Tenn. R. Crim. P. 52(b)); State v. Zachary V. Henning, No. W2005-00269-CCA-R3-CD, 2007 WL 570553, at *4 (Tenn. Crim. App., Jackson, Feb. 23, 2007). As a result, we will consider the Defendant's double jeopardy argument. We will also consider the Defendant's election argument because the failure of the State to elect offenses when the proof requires an election is considered an error of constitutional magnitude and will be considered as plain error. See State v. Kindrick, 385 S.W.3d 566 (Tenn. 2001). We likewise note that a conviction entered for especially aggravated burglary, if the conviction violates Tennessee Code Annotated section 39-14-404(d), constitutes plain error. See State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

## II.    Sufficiency of the evidence

The Defendant argues that the evidence presented at trial was not sufficient to sustain his convictions for attempted aggravated sexual battery and attempted especially aggravated burglary. We note that the Defendant does not contest the sufficiency of the evidence supporting his conviction for attempted aggravated rape. Rather, he contends that the evidence is insufficient to support his aggravated sexual battery conviction "because the State failed to prove beyond a reasonable doubt that the [D]efendant's alleged touchings of the victim could be reasonably

construed as being for the purpose of sexual arousal or gratification." Regarding his conviction for attempted especially aggravated burglary, he avers that the evidence presented did not sufficiently establish that the victim suffered serious bodily injury.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

### a.    Attempted aggravated sexual battery

A person attempts to commit aggravated sexual battery when he or she "[a]cts with intent to complete a course of action or cause a result that would constitute [aggravated sexual battery], under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of [aggravated sexual battery]." Tenn. Code Ann. § 39-12-101(a)(3) (providing the relevant definition of criminal attempt). As relevant to the Defendant's conviction, aggravated sexual battery is defined as "unlawful sexual contact with a victim by the defendant" where "[t]he defendant causes bodily injury to the victim."[3] Tenn. Code Ann. § 39-13-504(a)(2). Additionally, our code defines "sexual contact" as follows:

---

[3] We do not address whether the facts presented at trial could also have supported a charge of aggravated sexual battery based on the theory that the unlawful sexual contact was accomplished through the use of a weapon (plunger handle), see Tennessee Code Annotated section 39-13-504(a)(1), because the jury charge only included the definition of aggravated sexual battery involving bodily injury to the victim.

"Sexual contact" includes the intentional touching of the victim's, the defendant's, or any other person's <u>intimate parts</u>, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, <u>if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification</u>.

Tenn. Code Ann. § 39-13-501(6) (emphasis added). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

In this case, the Defendant does not argue that the victim did not sustain bodily injury or that no substantial step was taken towards the commission of aggravated sexual battery. Nor does he assert that the evidence failed to establish that he intended to touch the victim's intimate parts. Rather, he only asserts that none of his actions could be reasonably construed as being for the purpose of sexual arousal or gratification. We disagree.

The evidence in this case showed that the Defendant had expressed his sexual attraction for the victim prior to the incident by inquiring of Gordon whether she was "easy to get with." Further, although the Defendant did not make any direct statements regarding his carnal intentions during the attack, he did order the victim to "[b]ow down," and the victim testified that he was pulling her head toward his penis. The victim also testified that the Defendant tried to pull off her underwear, and one of the bites he inflicted was to her breast. Additionally, the victim's interpretation of the situation was that he was attempting to rape her. Viewing this evidence in a light most favorable to the prosecution, we conclude that the jurors could have reasonably inferred, and therefore that the evidence sufficiently established, that the Defendant took substantial steps towards touching one or more of the victim's intimate parts for the purpose of sexual arousal or gratification.[4] This issue has no merit.

### b.     Attempted especially aggravated burglary

The Defendant's challenge to the sufficiency of the evidence underlying his conviction for attempted especially aggravated burglary is that the State did not establish that the victim suffered "serious bodily injury" within the relevant definition and interpretations of the term. The State responds that "to support the conviction for <u>attempted</u> especially aggravated burglary, the evidence only needed to show that the Defendant intended to inflict serious bodily injury and took a substantial step toward doing so, which the evidence sufficiently demonstrated." (Emphasis added).

A person attempts to commit especially aggravated burglary when he or she "[a]cts with intent to complete a course of action or cause a result that would constitute [especially aggravated burglary], under the circumstances surrounding the conduct as the person believes them to be, and

_____

[4] We also note that, while the Defendant does not challenge the sufficiency of the evidence regarding his conviction for attempted aggravated rape, we conclude that the same evidence supporting his conviction for attempted aggravated sexual battery is sufficient to support his attempted aggravated rape conviction. And, as is explained below, this weighs in favor of finding that the two convictions violate double jeopardy protections.

the conduct constitutes a substantial step toward the commission of [especially aggravated burglary]." Tenn. Code Ann. § 39-12-101(a)(3) (providing the relevant definition of criminal attempt). Especially aggravated burglary is defined as the "[b]urglary of a habitation or building other than a habitation . . . [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-14-404(a)(1)-(2); see also Tenn. Code Ann. § 39-14-402(a)(3) (providing that one definition of "burglary" is entering a building without the effective consent of the property owner and attempting to commit a felony, theft, or assault). Serious bodily injury is a bodily injury that includes one or more of the following five attributes: a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted or obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. Tenn. Code Ann. § 39-11-106(a)(34)(A)-(E).

In this case, we agree with the State that it is unnecessary for the proof to show that the Defendant actually inflicted serious bodily injury to the victim[5] for the evidence to sufficiently support his conviction for attempted especially aggravated burglary. Certainly, infliction of serious bodily injury is an element of especially aggravated burglary but, because the Defendant was convicted of attempting that offense, the proof must only show that he took a substantial step toward completion of the crime while acting with the required culpability. In our view, the evidence presented by the State at trial sufficiently established as much.

The victim testified that the Defendant entered her habitation without her consent, and a violent physical struggle ensued as he attempted to commit a felony by raping her. When she resisted, he choked her hard enough to leave substantial marks on her neck, and when the victim tried to defend herself with the only weapon on hand (the wooden handle of a toilet plunger), the Defendant took it from her and beat her with it. According to the victim, he struck her repeatedly and with such force that she almost lost consciousness, and the head wound he inflicted bled profusely. He also bit her multiple times and used his fists to inflict deep bruises.

The proof also established that the Defendant abandoned his attempted rape and fled the apartment only after Gordon arrived and interrupted the attack. Accordingly, a reasonable juror could have concluded that the Defendant took substantial steps toward committing especially aggravated burglary.

### III. Double jeopardy

The Defendant argues that his convictions for attempted aggravated rape and attempted aggravated sexual battery violate his protections against double jeopardy as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Tennessee Constitution. He contends that these proscriptions were violated in his case because "[b]oth offenses stemmed from a single criminal episode and involved a single criminal intent." As such, he asserts that he is essentially being punished twice for one offense, which violates the

---

[5] To adjudicate this issue, it is not necessary for this Court to determine whether the injuries sustained by the victim constituted "serious bodily injury."

principles of double jeopardy as interpreted by the United States and Tennessee supreme courts. The State counters that because attempted aggravated rape and attempted aggravated sexual battery have different statutory elements, and because the convictions were based upon discrete acts, the dual convictions do not violate the principles of double jeopardy.

The double jeopardy clauses of the Tennessee and United States constitutions[6] have been interpreted to provide three principle protections: (1) protection from a second prosecution for the same offense following an acquittal; (2) protection from a second prosecution for the same offense following a conviction; and (3) protection against multiple punishments for the same offense. Lewis, 958 S.W.2d at 738 (citing State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996)) (other citations omitted); see also Whalen v. United States, 445 U.S. 684, 688 (1980) (citing North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). In this case, the third category of protection is at issue, raising the question of whether the Defendant's convictions for attempted aggravated rape and attempted aggravated sexual battery constitute two punishments for one offense. This issue has been referred to as one of "multiplicity." See State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996).

As set out by our high court in Denton, 938 S.W.2d at 381, resolution of this particular double jeopardy issue under the Tennessee Constitution requires the following four step analysis: (1) a Blockburger analysis[7] of the statutes defining the relevant offenses; (2) a consideration of the evidence used to establish the offenses, guided by the principles our supreme court articulated in Duchac v. State, 505 S.W.2d 237 (Tenn. 1973); (3) a consideration of whether there were discrete acts or multiple victims; and (4) a comparison of the statutes and their respective purposes. However, "[n]one of these steps is determinative; rather the results of each must be weighed and considered in relation to each other." Denton, 938 S.W.2d at 381; see also State v. Mixon, 983 S.W.2d 661, 675–76 (Tenn. 1999).

To conduct a Blockburger analysis, we are to determine whether the statutory definitions of the offenses at issue require "proof of a fact that the other does not," with the focus being on the elements of the offenses. State v. Black, 524 S.W.2d 913, 920 (Tenn. 1984) (quoting Blockburger, 284 U.S. at 304) (other citations and internal quotations omitted). In this case, this analysis must be applied to the offenses of attempted aggravated rape and attempted aggravated sexual battery, as defined in the Tennessee Code.

The offenses of aggravated rape and aggravated sexual battery each contain a statutorily defined element that the other does not: the rape offense requires that a defendant "penetrate" the victim and cause bodily injury, and the aggravated sexual battery offense requires that a defendant

---

[6] We note that Tennessee's constitutional protection against double jeopardy has been construed to be greater than that offered by the federal constitution. State v. Roland R. Smith, No. M2004-01457-CCA-R3-CD, 2005 WL 1541874, at *9 (Tenn. Crim. App., Nashville, June 29, 2005), perm. to appeal denied (Tenn. Dec. 5, 2005) (citing Denton, 938 S.W.2d at 378–81). Article I, section 10 of the Tennessee Constitution states "[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb."

[7] See Blockburger v. United States, 284 U.S. 299, 304 (1932).

-11-

touch a victim's intimate parts for the purpose of sexual arousal or gratification and cause bodily injury. See Tenn. Code Ann. §§ 39-13-502(a)(2) (defining aggravated rape); 39-13-504(a)(2) (defining aggravated sexual battery). Therefore, these offenses are not the "same" for double jeopardy purposes. See Mixon, 983 S.W.2d at 676 (conducting a Blockburger analysis of the Tennessee Code provisions defining attempted rape and the provision defining sexual battery); see also State v. Bowles 52 S.W.3d 69, 75–77 (Tenn. 1998) (determining that sexual battery is a lesser included offense of aggravated rape notwithstanding the fact that the offenses have differing elements) (citing State v. Carico, 968 S.W.2d 280, 286 (1998)) (other citations omitted).

However, because each conviction offense in this case is an attempted rather than a completed crime, it is not essential that the State prove either that the defendant actually penetrated a victim or actually touched a victim's intimate parts for the purpose of sexual arousal or gratification. Rather, the State must only prove that the defendant took a substantial step toward those completed crimes. See Tenn. Code Ann. § 39-12-101(a)(3) (providing the relevant definition of criminal attempt). As a result, a single act by a defendant could serve as the only proof necessary that a defendant committed both attempted offenses. For example, if the proof showed that a defendant injured a victim while forcefully removing his or her clothing, but the sexual assault went no farther, that single action could be properly considered as a substantial step toward the completion of both aggravated rape and aggravated sexual battery. Accordingly, such proof would support convictions for both attempted aggravated rape and attempted aggravated sexual battery.

Moreover, the presence of different statutory elements weighs against a finding of multiplicity in cases of this type, but it does not preclude such a finding—even in sexual assault cases where the defendant was convicted of completed crimes. Compare State v. Barney, 986 S.W.2d 545, 549–50 (Tenn. 1999) (holding that separate convictions for rape of a child and aggravated sexual battery did not violate double jeopardy), with State v. Chester Wayne Walters, No. M2003-03019-CCA-R3CD, 2004 WL 2726034, at *5–6 (Tenn. Crim. App., Nashville, Nov. 30, 2004) (holding that separate convictions for aggravated sexual battery and rape of a child did violate double jeopardy), perm. to appeal denied (Tenn. Mar. 21, 2005). In this case, the determination of whether the two convictions violate double jeopardy depends more on the additional factors articulated in Denton.

The second Denton factor requires that we examine the evidence used to convict the Defendant in light of our supreme court's decision in Duchac, 505 S.W.2d at 239–40. Denton, 932 S.W.2d at 381. In Duchac, our supreme court set out what has been called the "same evidence test," which is a determination of "whether the same evidence is required to prove" both offenses at issue. Duchac, 505 S.W.2d at 239. If the same evidence is not required to prove each offense, then the fact that both charges resulted from one event does not implicate double jeopardy concerns. Id.

In this case, we conclude that the same evidence was required to prove both the attempted aggravated rape and the attempted aggravated sexual battery. The victim's testimony evinced that the Defendant took her by surprise and attempted to sexually assault her as she fought him off. Gordon's testimony established that the Defendant desired some type of sexual interaction with the

victim prior to the assault. Thus, the same evidence was required to prove both offenses. The videotape and DNA evidence, although arguably not required, confirmed that the Defendant was the individual who perpetrated the offenses.

The third Denton factor requires us to consider whether there were discrete acts or multiple victims. Denton, 932 S.W.2d at 381. Clearly, there was only one victim. However, whether the Defendant committed discrete acts depends on how narrowly we view two details from the victim's testimony. First, she testified that at the outset of the assault, the Defendant (who was fully clothed) grabbed her by the throat, demanded she "[b]ow down," and pulled her head toward his penis. Second, she testified that during the fight, he attempted to forcibly remove her underwear as she crawled away.

In our view, it requires speculation to conclude that the Defendant attempted two discrete acts which could reasonably be viewed as constituting different offenses. However, we conclude that the evidence, in consideration of all the circumstances surrounding the assault, supports the view that the Defendant committed one continuous and ultimately unsuccessful attempt to rape the victim. In other words, based on this evidence, we are not able to conclude that the Defendant attempted to commit a series of different sexual offenses against the victim. Very little time elapsed between the Defendant's actions, and they were all taken during the course of singular and continuous physical altercation. See Phillips, 924 S.W.2d at 665 (suggesting that, among other factors in sexual assault cases, the nature of the act, the time elapsed between any discrete conduct, and the accused's intent should all be examined to determine whether convictions are multiplicitous).[8] Accordingly, the third Denton factor weighs heavily in favor of the Defendant's argument because we find that there was one victim and no discrete acts.

The fourth Denton factor requires us to compare the relevant statutes and their respective purposes. Denton, 932 S.W.2d at 381. As stated by our supreme court, the rape and sexual battery statutes are both "intended and designed to deter and punish sexually assaultive conduct." Mixon, 983 S.W.2d at 676. Accordingly, the fourth factor also weighs in favor of the Defendant's argument.

Based on our careful review of the above factors, we conclude that the Defendant's convictions for attempted aggravated sexual battery and attempted aggravated rape violate the Tennessee Constitution's proscription against double jeopardy. Consequently, we vacate the judgment of the trial court entered on the Defendant's conviction for attempted aggravated sexual

---

[8] In State v. Barney, 986 S.W.2d 545, 548–49 (Tenn. 1999), our supreme court set out five additional factors, relevant to the instant analysis, that can be considered to determine whether discrete conduct in the course of a sexual assault "is directly facilitative, and thus, incidental, or merely preparatory in the sense of intending to arouse the victim or perpetrator" for commission of the principle offense. These factors (temporal and spatial proximity of acts, sequence of acts, a defendant's intent, and whether discrete acts were separated by any interruptions) also support our conclusion that all of the Defendant's actions were taken in furtherance of his singular intent to rape the victim. However, we note that analysis of these factors is more useful in evaluating whether convictions for completed, rather than attempted, offenses violate double jeopardy.

-13-

battery because that conviction should have been merged with the greater offense of attempted aggravated rape.

## IV. Election

The Defendant also argues that the trial court committed plain error by not requiring the State to make an election of offenses. The State contends that the Defendant waived this issue by not including it in his motion for a new trial and because he did not include a transcript of the parties' closing arguments in the record on appeal.

When the State charges a defendant with one or more sexual offenses and puts forth proof at trial supporting those and additional sexual offenses, the doctrine of election is implicated. In such circumstances, the State must select from among the various offenses proved, those particular acts upon which it seeks convictions. See State v. Johnson, 53 S.W.3d 628, 630 (Tenn. 2001); State v. Kendrick, 38 S.W.3d 566, 568 (Tenn. 2001); State v. Brown, 992 S.W.2d 389, 391 (Tenn. 1999); State v. Walton, 958 S.W.2d 724, 727 (Tenn. 1997); Tidwell v. State, 922 S.W.2d 497, 500–01 (Tenn. 1996); State v. Shelton, 851 S.W.2d 134, 136–37 (Tenn. 1993); Burlison v. State, 501 S.W.2d 801, 804 (Tenn. 1973). The Burlison decision cites three reasons for the election requirement:

> First, to enable the defendant to prepare for and make his defense to the specific charge; second, to protect him from double jeopardy by individualization of the issue, and third, so that the jury's verdict may not be a matter of choice between offenses, some jurors convicting on one offense and others, another.

501 S.W.2d at 803. The third rationale for election addresses the most serious concern: "the well-established right under our state constitution to a unanimous jury verdict before a criminal conviction is imposed." Shelton, 851 S.W.2d at 137. This right "requires the trial court to take precautions to ensure that the jury deliberates over the particular charged offense, instead of creating a patchwork verdict based on different offenses in evidence." Id.

In this case, as we set out above, we have concluded that the Defendant's actions supported only one charge of attempted aggravated rape. Accordingly, there was no need for the State to elect between the various actions of the Defendant and there was no error in this regard. Here, the error was primarily rooted in double jeopardy, not the election of offenses.

## V. Tennessee Code Annotated section 39-14-404(d)

The Defendant was charged in this case with especially aggravated burglary, which is set forth by statute as follows:

> (a) Especially aggravated burglary is:
> (1) Burglary of a habitation or building other than a habitation; and
> (2) Where the victim suffers serious bodily injury.
> (b) For the purposes of this section, "victim" means any person lawfully on
> the premises.

(c)  Especially aggravated burglary is a Class B felony.
(d) Acts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both.

Tenn. Code Ann. § 39-14-404.

The Defendant argues on appeal that his conviction for attempted especially aggravated burglary is precluded by subsection (d) of the especially aggravated burglary statute.  He argues that because he was convicted of attempted aggravated rape and attempted aggravated sexual battery, his conviction for attempted especially aggravated burglary cannot stand and must be modified to attempted aggravated burglary.

As the Defendant points out, the statute prohibits using the same proof to prosecute and convict for especially aggravated burglary and aggravated rape.  See State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).  In such case, the proper remedy has been found to be modifying the especially aggravated burglary conviction to the lesser included offense of aggravated burglary.  See id.

Here, the Defendant was not convicted of especially aggravated burglary.  The jury convicted the Defendant of the lesser included offense of attempted especially aggravated burglary.  The State argues that because the Defendant was not convicted of especially aggravated burglary, subsection (d) of the especially aggravated burglary is inapplicable and does not preclude conviction of attempted especially aggravated burglary.

It is apparent that our legislature determined that when a victim suffers serious bodily injury during the commission of a burglary, the offender should be guilty of a Class B felony and punished accordingly.  However, if the act which caused the serious bodily injury also constitutes a separate offense, our legislature specifically provided that the offender could be prosecuted for either the especially aggravated burglary or for the other crime, but not for both.

In this instance, the Defendant was prosecuted for especially aggravated burglary and for attempted aggravated rape and aggravated sexual battery, based upon bodily injury suffered by the victim. The acts which caused "serious bodily injury" to the victim during the attempted especially aggravated burglary also provided the "bodily injury" element for the prosecution for attempted aggravated rape and aggravated sexual battery.  In our view, the statute did not allow the prosecution of the Defendant for especially aggravated burglary because the State chose to prosecute the Defendant for aggravated sexual battery and attempted aggravated rape.  Although the State argues that the statute is inapplicable because the Defendant was convicted of only attempted offenses, the record reflects that the Defendant was prosecuted for both especially aggravated burglary and the additional offenses.  This prosecution for multiple offenses was prohibited by Tennessee Code Annotated section 39-14-404(d).

Accordingly, we conclude that the Defendant's conviction for attempted especially aggravated burglary must be modified to attempted aggravated burglary. Attempted aggravated burglary is a Class D felony. See Tenn. Code Ann. §§ 39-12-107(a); 39-14-403(b).

## VI. Sentencing

Lastly, the Defendant challenges his sentences, arguing that the trial court erred by imposing excessively long sentences and by imposing partial consecutive sentencing. Specifically, the Defendant avers that the trial court misapplied enhancement factors in determining the length of his sentences and that consecutive sentencing was inappropriate because he is not a "dangerous offender" within the meaning of Tennessee Code Annotated section 40-35-115(b)(4) and because thirty-seven years is a sentence greater than that deserved for the offenses committed.

Initially, we note that because the Defendant did not execute an ex post facto waiver, and because his offenses took place on June 1, 2005, and he was sentenced on February 23, 2007, the 2003 codification of the Criminal Sentencing Reform Act of 1989 is the governing law in this case. See 2005 Tenn. Pub. Acts ch. 353, § 18; see also Tenn. Code Ann. §§ 40-35-114, -210 (2006), Compiler's Notes; State v. Shawn McCobb, No. W2006-01517-CCA-R3-CD, 2007 WL 2822921, at *4 n.2 (Tenn. Crim. App., Jackson, Sept. 26, 2007).

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes

and principles of the 1989 Sentencing Act and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

In this case, it is undisputed that the Defendant was a Range III, persistent offender. See Tenn. Code Ann. § 40-35-107(a)-(c) (2003). Accordingly, for the offense of attempted aggravated rape, a Class B felony, he could have been sentenced to "not less than twenty (20) nor more than thirty (30) years." Tenn. Code Ann. § 40-35-112(c)(2) (2003). And, for the offenses of attempted aggravated sexual battery and attempted especially aggravated burglary, Class C felonies, he could have been sentenced to "not less than ten (10) nor more than fifteen (15) years" for each offense. Tenn. Code Ann. § 40-35-112(c)(3) (2003).

At the Defendant's sentencing hearing, no testimony was presented, but the Defendant argued that the proof at trial showed that he was entitled to the minimum sentence on each count and that all sentences should be ordered to be served concurrently. He claimed that his drug and alcohol addictions played a large role in his commission of the crimes.[9] And, although he admitted that he was on parole at the time he committed the instant offenses, he argued that no other enhancement factors were applicable. The State submitted the Defendant's presentence report for the trial court's consideration, arguing that based on his criminal record, he should receive the maximum sentence on each count, all to be served consecutively.

The Defendant's presentence report showed that he had been previously convicted of at least seventeen offenses in two states. His criminal record from Illinois showed that he had been convicted of the following nine crimes: attempted rape; robbery armed with a deadly weapon (in two separate cases); theft of property valued between $500 and $1,000 (in three separate cases); aggravated assault (in two separate cases); and felon in possession of a weapon. He had also been previously convicted of the following eight offenses in Tennessee: possession of unlawful drug paraphernalia; theft of property valued at or below $500 (in two separate cases); assault; driving on a suspended license; disorderly conduct; vandalism of property valued at or below $500; and aggravated assault. The State's sentencing memorandum, supported by Illinois records, also reflected that the Defendant had been previously convicted of "home invasion" (for which he was sentenced to five years); residential burglary (for which he was sentenced to eight years); and possession of a stolen vehicle (for which he was sentenced to nine years).

---

[9] The presentence report reflects that the Defendant reported that he had consumed alcohol, as well as used cocaine and heroin everyday since 1991. He also made the following statement regarding his addiction problems:

> All this happened due to my addiction to drugs and alcohol. That is what led me to do this crime. I was under the influence of drugs and alcohol. I know it's no excuse for doing this, but that's the only reason it happened. I've been going through programs [while incarcerated, such as] NA and AA, to work on my problems with drugs and alcohol.

Before determining whether any enhancement or mitigating factors applied, the trial court made the following statement:

In determining the appropriate sentence for this offense, the court has considered the evidence presented at the trial, as well as the sentencing hearing, which is primarily the presentence report and his prior record of offenses, primarily out of Illinois, the sentencing principles embodied in [Tennessee Code Annotated section] 40-35-103, the arguments made as to alternative sentencing . . . the range of sentencing, the nature an characteristics of criminal conduct involved, the evidence and information offered on enhancement and mitigating factors, the statement of the [D]efendant as contained in the presentence report, the [D]efendant's potential for rehabilitation and treatment, the purposes of the sentencing reform act of 1989 as contained in [Tennessee Code Annotated section] 40-35-102.

The trial court also stated that since several of the Defendant's prior convictions were at least Class C felonies, he was "probably" a career offender, but it was "agreed upon" that he would be sentenced as a persistent offender.

Regarding enhancement factors, the trial court found that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(2) (2003). Next, the trial court determined that his sentences for attempted aggravated rape and attempted especially aggravated burglary could be enhanced because the offenses were committed to gratify his desire for pleasure and excitement and involved a victim. See Tenn. Code Ann. § 40-35-114(8) (2003). The trial court also found that the Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(9) (2003). In addition, the trial court found that the Defendant employed a deadly weapon (plunger handle) in the commission of the attempted aggravated rape and attempted aggravated sexual battery convictions, and that those sentences could be thereby enhanced. See Tenn. Code Ann. § 40-35-114(10) (2003). The court also concluded that the Defendant had no hesitation about committing a crime when the risk to human life was high and that his felonies resulted in bodily injuries. See Tenn. Code Ann. §§ 40-35-114(11)-(12) (2003). Lastly, the court found that the Defendant was on parole at the time he committed the offenses. See Tenn. Code Ann. § 40-35-114(14)(B) (2003).

Regarding factors in mitigation, the trial court did not find any specific statutory factors applicable.

In determining whether the Defendant should receive any consecutive sentences, the trial court made the following statement:

In terms of the discretionary sentencing factors for consecutive sentencing, the court finds that the [D]efendant is an offender whose record of criminal activity is extensive, he's had at least three different stints in the penitentiary in Illinois. The

court also finds that the offender is a dangerous offender whose behavior indicates little or no disregard for the human life, no hesitation about committing a crime when the risk to human life is high. The court finds that the circumstances of this offense were aggravated, not so much from the actual consequences that arose because of the seriousness of the injuries, but because there's no question in my mind that this was a premeditated act, he had sat there and observed [the victim] out there on her balcony for some period of time and just did not hesitate, I mean, just flat decided that he was going to perpetrate a rape and had no hesitation about doing it and was only [prevented from accomplishing] it by the unexpected intrusion of the neighbor. The court also finds that confinement for an extended time is necessary to protect society from the [D]efendant's unwillingness to lead a productive life when the [D]efendant resorted to criminal activity in furtherance of his anti-social behavior and that the aggregate length of the sentence as reasonably relates to the offense of which the [D]efendant stands convicted.

The trial court also noted that the Defendant was not eligible for alternative sentencing because he was a Range III offender.

Based on the foregoing considerations, at the close of the hearing, the trial court sentenced the defendant to the middle of the range on each count, imposing a sentence of twenty-five years for the attempted aggravated rape, and twelve years for each remaining offense. The court ordered that the sentences for attempted aggravated rape and attempted aggravated sexual battery would be served concurrently but consecutively to the sentence for attempted especially aggravated burglary, for a total effective sentence of thirty-seven years to be served in the Department of Correction as a Range III, persistent offender.

The Defendant argues, and the State agrees, that the trial court's enhancement of his sentences based on factors other than his prior criminal history violated his Sixth Amendment right to a jury trial. Because the Defendant was sentenced under the law prior to the 2005 amendments, we also agree. See generally State v. Gomez, 239 S.W.3d 733, 740–41 (Tenn. 2007). However, the Defendant's extensive criminal record alone supports the elevation of his sentences to the middle of the range on each offense. Thus, the trial court's error in unilaterally finding enhancement factors was harmless error. See State v. Mitchell Eads, No. E2006-02793-CCA-R3-CD, 2008 WL 2790434, at *10–12 (Tenn. Crim. App., Knoxville, July 21, 2008) (finding that the trial court's unilateral finding of enhancement factors was harmless error because the defendant's extensive criminal record alone warranted elevation of his sentence above the presumptive minimum).

We have previously determined that the Defendant's conviction for attempted especially aggravated burglary, a Class C felony, must be modified to attempted aggravated burglary, a Class D felony. For the C felony, the trial court imposed a mid-range sentence of twelve years. The sentencing range for the Defendant's Class D felony conviction for attempted aggravated burglary is between eight and twelve years, to be served as a Range III, persistent offender. We have determined that the Defendant's extensive criminal record supports the elevation of his sentence to

the middle of the range. Therefore, rather than remand this matter to the trial court for sentencing on the Class D felony conviction, we impose a mid-range sentence of ten years as a Range III, persistent offender. This case will be remanded to the trial court for entry of a new judgment reflecting modification of the conviction from attempted especially aggravated burglary to attempted aggravated burglary and reflecting a sentence of ten years to be served consecutively to the twenty-five-year sentence for attempted aggravated rape.

The Defendant also argues that the trial court erred by imposing partial consecutive sentences. We do not agree. A trial court may order consecutive sentences if any of the following seven criteria are present:

(1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (2003). Here, the trial court specifically found that the second and fourth factors were applicable in the Defendant's case. In our view, the record supports the application of both factors. Thus, we conclude that imposition of partial consecutive sentencing in this case was not error.

## Conclusion

Based on the foregoing authorities and reasoning, we vacate the Defendant's conviction for attempted aggravated sexual battery because we merge that offense with the attempted aggravated rape. We affirm the Defendant's conviction and sentence for attempted aggravated rape. We modify

-20-

the Defendant's conviction from attempted especially aggravated burglary to attempted aggravated burglary and direct the imposition of a ten-year sentence for that offense. Consecutive sentences are affirmed.

_____
DAVID H. WELLES, JUDGE